FILED IN MY OFFICE
DISTRICT COURT CLERK
8/3/2017 12:04:11 PM
STEPHEN T. PACHECO
Victoria Martinez

**4-206** . **Summons.**

[For use with District Court Civil Rule 1-004 NMRA]

|  |  |
|---|---|
| **SUMMONS** <br> **ON** <br> **AMENDED COMPLAINT** | |
| District Court: FIRST JUDICIAL <br> Santa Fe County, New Mexico <br> Court Address: 225 Montezuma Ave. <br>     Santa Fe, NM  87501 <br> Court Telephone No.: (505) 455-8250 | Case No.: **D-101-CV-2017-02182** <br> Judge: David K. Thompson |
| Plaintiff(s) <br> K.M. SKELLY, INC. <br> v. <br> Defendant(s): <br> SEASIDE PARTNERS, LLC | Defendant <br> Name:   SEASIDE PARTNERS, LLC <br> Address: c/o James M. Yates, Jr., <br> Registered Agent <br> 4101 Lake Boone Trail, Suite 300 <br> Raleigh, NC  27607-7545 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

**1.**   A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

**2.**   You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.

**3.**   You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.**   If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.**   You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.**   If you need an interpreter, you must ask for one in writing.

**7.**   You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at First Judicial District Court, Santa Fe County, New Mexico, this _03_ day of _August_, 2017.

| CLERK OF COURT | |
|---|---|
| Stephen T. Pacheco | |
| By *Victoria Marty*<br>Deputy | **Attorneys for Plaintiff,**<br>**K.M. SKELLY, INC.**<br><br>/s/ Mark L. Ish<br>Mark L. Ish, Esq.<br>FELKER, ISH, RITCHIE & GEER, P.A.<br>Address:  911 Old Pecos Trail<br>          Santa Fe, NM 87505<br>Telephone No.: (505) 988-4483<br>Fax No.:      (505) 983-4876<br>Email Address:  markish@felkerishlaw.com |

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN** [1]

STATE OF _____     )

                             )ss

COUNTY OF _____     )

    I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

    [ ] to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

    [ ] to the defendant by [mail] [courier service] as provided by Rule <u>1-004</u> NMRA (*used when service is by mail or commercial courier service*).

    After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

    [ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

    [ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

    [ ] to _____, an agent authorized to receive service of process for defendant _____.

    [ ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[  ]  to _____ (*name of person*), _____,
(*title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____. [2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

USE NOTE

1.  Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.  If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
8/3/2017 12:04:11 PM
STEPHEN T. PACHECO
Victoria Martinez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

K.M. SKELLY, INC.,

      Plaintiff,

v.                               Case No.: D-101-CV-2017-02182

SEASIDE PARTNERS, LLC,

      Defendant.

## AMENDED COMPLAINT TO FORECLOSE LIEN AND FOR BREACH OF CONTRACT

COMES NOW Plaintiff, K.M. Skelly, Inc. (hereinafter "Skelly"), by and through its attorneys, Felker, Ish, Ritchie & Geer, P.A. (Mark L. Ish, William D. Winter and Bryan M. Rowland), and for its Amended Complaint against Defendant, Seaside Partners, LLC ("Seaside") states as follows:

1.    Plaintiff is a New Mexico corporation with its principal place of business in Santa Fe, New Mexico. Plaintiff is a general contractor, with a GB 98, number 384120, and at all times material hereto was properly licensed to perform work as a general contractor.

2.    Defendant, Seaside, is, upon information and belief is a North Carolina limited liability company with its principal place of business in Palm Beach, Florida. Upon information and belief, Seaside is a single member limited liability company, whose only member is Roxanne Quimby, who lists her address in Palm Beach, Florida.

3.    This court has jurisdiction of the parties and the subject matter.

4.    Venue is proper in the First Judicial District Court, County of Santa Fe, State of New Mexico. The property, the subject of this Complaint and lien foreclosure action is located in Santa Fe County, New Mexico.

1

5.      Plaintiff and Defendant entered into two (2) contracts in New Mexico relating to the construction of a large residence located in Santa Fe, New Mexico.   Copies of the contracts are attached hereto, marked as Exhibits 1 and 2, and incorporated by reference.

6.      At all times material hereto, Defendant hired and retained a construction manager to advise it and its managing member, Roxanne Quimby, with respect to the work which was progressing on the project, the expenditures which were being made, the nature of the contractual obligations which it was undertaking, and with respect to changes, additions, and deletions to the scope of work.   The construction manager retained by Defendant is an individual by the name of Walter Abernathy.

7.      At all times material hereto, Defendant retained the services of an architect to prepare the plans and specifications, and to make pertinent changes, additions, or recommendations with respect to the construction.   The architect retained by Defendant was an individual by the name of Trey Jordan.

8.      At all times material hereto, Defendant retained the services of a structural engineer to evaluate work on the project, to examine the plans and specifications, and to make structural recommendations to the architect, construction manager, and to provide guidance to Plaintiff, as the general contractor.   The engineer retained by Defendant was Eric Trujillo.

9.      Construction was commenced on the project pursuant to the terms of the agreement dated October 8, 2014 which is attached hereto as Exhibit 1.   Construction was halted on the project for a period of time until the work described under the terms of Exhibit 2 was agreed upon and that contract was executed.   At all times material hereto, Defendant had legal counsel at its disposal to review the terms of Exhibits 1 and 2 and had the advice and consult of Walter Abernathy, its construction manager.

2

10.     On a periodic basis, Plaintiff provided a detailed and informative report reflecting expenditures, work undertaken, and costs for labor, materials, and the work of subcontractors pursuant to the terms of Exhibits 1 and 2.  These regular reports, which included items invoiced to the Defendant, were received by Defendant and its construction manager.

11.     Up until approximately November, 2016, Defendant paid the invoices.  There were substantial changes, modifications, and deletions with respect to the scope of the work, and there were certain additions to the work undertaken which were negotiated between Plaintiff and Defendant or its construction manager, were approved by it or by its construction manager, and are evidenced by written change orders, emails, or invoices reflecting the decisions made by the Plaintiff in the field which had been authorized by Defendant.

12.     On or about December 18, 2016, Defendant unilaterally terminated the contract and instructed Plaintiff to remove its equipment, employees and subcontractors from the project. Plaintiff complied with the request.  At that time, Defendant was indebted to Plaintiff for materials and labor furnished or purchased for use on the project under the terms of the construction contract (Exhibits 1 and 2) in the sum of $92,831.15.  A copy of the invoice dated April 5, 2017 reflecting the sums due Plaintiff for these items as of the date of termination, and reflecting all just credits and offsets to which Defendant is entitled, is attached hereto, marked as Exhibit 3, and incorporated by reference.  Despite demand upon it to do so, Defendant has willfully refused to pay all or any portion of Exhibit 3.

13.     At Defendant's request, Plaintiff met with Defendant's construction manager, engineer, a contractor ostensibly selected by Defendant to complete the project in an effort to make the transition seamless.  The project engineer, Eric Trujillo issued a report, in an effort to determine what, if any, items needed to be addressed at that stage of construction.  Plaintiff has,

3

at all times material hereto, offered to address, or to obtain the assistance of its subcontractors in addressing any claims of alleged incomplete, defective or unknown workmanlike performance.

14. Defendant has refused to permit Plaintiff to perform any additional work on the project or to address any of the matters which Defendant now claims to constitute incomplete, defective, or un-workmanlike performance. Plaintiff has fully and completely performed or attempted in good faith to perform or address with its subcontractors its obligations under the terms of the contracts (Exhibits 1 and 2).

COUNT I
BREACH OF CONTRACT

15. Plaintiff realleges and incorporates by reference the allegations contained within paragraphs 1 through 14 as though fully set forth herein.

16. Under the terms of the construction agreements (Exhibits 1 and 2), Plaintiff is entitled to compensation for all labor and materials incorporated in, delivered to, or purchased by it for the project for which Plaintiff has not been paid or reimbursed.

17. Under the terms of Exhibits 1 and 2, Plaintiff is also entitled to additional compensation for its anticipated overhead and profit in an amount reflecting 22% of the anticipated cost to complete the construction project. Plaintiff has made demand for 22% of what it reasonably believes the cost to complete the project will be and payment has been refused. Defendant has refused to provide a detailed breakdown of the costs to complete the project as of the date of filing this Complaint.

18. Subsequent to termination of Plaintiff's contract and the exclusion of Plaintiff and its subcontractors from the project, Defendant engaged experts to review the contracts, plans, specifications, and the work in place with the primary intention of developing a list of alleged defects or deficiencies against which the sums lawfully due Plaintiff could be deducted or offset.

4

These items are, by and large, inconsequential and de minimus in nature and value, or were the subject of change orders, amendments to the scope of the work, or reflect reasonable decisions made by Plaintiff in the field with the concurrence and approval of Defendant and its construction manager. In addition, Defendant has refused Plaintiff's offer and attempts to address or correct any work which may need attention, and has refused Plaintiff access to the project except for the limited inspections associated with this litigation, and has thwarted Plaintiff's efforts to meet its contractual obligations.

19.     Defendant has willfully, maliciously, and in bad faith breached the agreements relating to the construction of this project, including the implied covenants of good faith and fair dealing.

20.     Plaintiff is owed $279,990.32 for services and materials incorporated into or supplied to the project and for overhead and profit on account of Defendant's termination of its performance under the contracts. Defendant has refused to pay all or any portion of the sum. As a consequence thereof, Plaintiff has been required to borrow money to fund its business at higher than market rates of interest, and has incurred other damages as a foreseeable consequence of Defendant's breach of contract. Plaintiff has been required to retain attorneys to collect the sum owed and to defend against Defendant's spurious claims and allegations.

21.     Plaintiff is entitled to recover compensatory damages against Defendant resulting from its breach of contract, together with prejudgment interest, attorneys' fees, and costs as allowed by law.

22.     Given the malicious, intentional, knowing, and bad faith breach of contract by Defendant, Plaintiff is entitled to recover punitive damages from Defendant.

5

COUNT II
FORECLOSURE OF LIEN

23.     Plaintiff realleges and incorporates by reference the allegations contained within paragraphs 1 through 22, as though fully set forth herein.

24.     The construction project is not substantially complete and the project has not received a certificate of occupancy.

25.     On the 21st day of April, 2017, Plaintiff filed its Lien reflecting the sums to which it believed it was entitled as of that date pursuant to New Mexico's Mechanics Lien Law.   A copy of the Lien is attached hereto, marked as Exhibit 4 and incorporated by reference.

26.     Exhibit 4 is properly verified and it contains the information required by law.

27.     Plaintiff is entitled to foreclosure of its Lien against the property and from the sale of the property to recover all sums lawfully due it for labor and materials that have been supplied, for its overhead and profit upon Defendant's termination of the contract, and such other damages as Plaintiff has sustained.

28.     Plaintiff is entitled to recover its attorneys' fees, prejudgment interest, costs, and related foreclosure expenses as allowed by law.

WHEREFORE, Plaintiff requests judgment against Defendant for compensatory damages, punitive damages, prejudgment interest, attorneys' fees, costs, for foreclosure of its Lien in the manner provided by law, for the appointment of a special master to sell the property at a public auction as permitted by law, for the sale proceeds to pay Plaintiff such sums as are justly due it, and for such other and further relief as to the court is just and proper.

Respectfully submitted,

**FELKER, ISH, RITCHIE & GEER, P.A.**

By: _/s/ Mark L. Ish_
    Mark L. Ish, Esq.
    William D. Winter, Esq.
    Bryan M. Rowland, Esq.
    911 Old Pecos Trail
    Santa Fe, NM   87505
    (505) 988-4483
    markish@felkerishlaw.com
    williamwinter2003@yahoo.com
    bmr@felkerishlaw.com



RECEIVED
OCT 2 8 2014
BY:

## CONSTRUCTION CONTRACT

This Construction Contract (the "Contract" or "Agreement") is entered into as of October 8, 2014, between Seaside Partners, LLC, Roxanne Quimby, whose address is 1380 Tesuque Creek Road, Santa Fe, New Mexico, 87505 ("Owner") and K. M. Skelly, Inc., a New Mexico corporation, whose address is P. O. Box 23086, Santa Fe, New Mexico 87502-3086 ("Contractor").

### RECITALS

A.   Owner is the owner of the real property located at 1380 Tesuque Creek Road, Santa Fe, New Mexico, 87505, known as (the "Property" or "Site").

B.   Owner has requested a new single family residence with guest house to be constructed per drawings by Trey Jordan Architects.

C.   Contractor is a duly-licensed contractor in New Mexico, operating under GB-98 License No. 87933, with Kevin M. Skelly as its qualifying party. Contractor desires to perform the improvements contemplated by Owner.

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises in this Agreement, the parties agree as follows:

1.   Contract Work.  Contractor agrees to perform the work as drawn by Trey Jordan Architects, in phases, as blueprints become available. Until the blueprints become available for a "fixed price" estimate, construction will progress on a cost plus basis described in Schedule "A" at the Property in accordance with the specifications and other documents included as part of Schedule "A"; all of which are referred to below as the "Specifications." The work to be performed by Contractor is called the "Work" and the overall project contemplated by this Agreement is called the "Project." The Work shall be performed in accordance with the Specifications, as amended in the manner specified below.

2.   Performance Standard.  The Work shall be performed and completed in a good and workmanlike fashion, in accordance with applicable laws, codes and regulations, and no Work shall be undertaken until the appropriate governing agency issues all required permits. "Completion" includes obtaining all final approvals or amendments of existing certificates, as the case may be.  Unless otherwise specified in the Plans, the Work shall utilize new materials. Contractor shall check and verify all dimensions, grades, and levels before commencement of the Work and whenever necessary during the progress thereof.  Contractor shall perform under this Agreement as an independent contractor and will provide all labor, tools, scaffolding, equipment, and supplies for the performance of the Work.

*KMS 10/08/14*

**Exhibit 1**

*10/22/14*

3.     Contract Cost.  Owner agrees to pay Contractor cost of construction plus 12% Overhead and 10% Gross Profit plus applicable New Mexico gross receipts tax (calculated at time of invoicing), for Contractor's complete performance of the Work, in accordance with the terms stated in Schedule B.  Other than the amounts set forth above, plus the amounts set forth in any change orders, plus the applicable gross receipts tax payable on the compensation paid to Contractor, all costs and fees to be paid in connection with the Work shall be paid by Contractor. Invoices will be sent to Owner for labor and materials supplied pursuant to this Agreement periodically, but not less frequently than every ninety (90) days and at the completion of the Project.  Payment is due upon receipt of the invoice and shall accrue interest at the annual rate of 12% per annum if unpaid after twenty (20) days from the Owner's receipt.  Contractor may stop work on the Project, or may terminate this Contract if payment of any invoice submitted to Owner remains unpaid for a period of thirty (30) days from the date of the invoice.  In such event Owner shall pay Contractor all sums required as though this Contract were terminated by Owner pursuant to Paragraph 15.

4.     Time Periods.

4.1          Contractor agrees to begin and complete the Work at the times specified in Schedule C.  Time is of the essence of this Contract.  Contractor shall proceed with all Work diligently, using such means and methods of construction as will assure completion in a timely manner.  If the Work is delayed due to causes beyond the Contractor's control, such as weather, shortage or absence of materials, strikes, or delay in obtaining requisite inspections or approvals, the deadline for completion of the Project shall be extended accordingly and reflected in an appropriate Change Order.

4.2          To enable the Work to be laid out and prosecuted in an orderly and expeditious manner, Contractor, shall provide Owner with a proposed progress schedule within ten (10) days of execution of this Agreement.  Contractor shall, to the extent practicable, coordinate its work with Contractor's subcontractors and with others performing work on the Project.

4.3          Owner acknowledges that it must make certain decisions through the course of construction and that delays in making such decisions may cause the Project to fall behind the schedule set forth in Schedule C.  Owner agrees to make all decisions requested by Contractor in a reasonable time frame.

5.     Waivers of Liens.  Concurrently with Owner's final payment, Contractor will deliver to Owner waivers of liens from all parties who supplied labor, material, or services in completion of the Contract, including that of Contractor, together with satisfactory proof of full payment to such suppliers and subcontractors.

6.     Tools, Machinery, Equipment.  Owner assumes no liability or responsibility for the care, safety, or preservation of any tools, machinery, equipment, material, or supplies and all risks thereof are assumed by Contractor.

7.     Protection of Persons and Property.  Contractor shall take reasonable precautions to protect the persons and property of others on or adjacent to the Site from damage, loss, or injury resulting

*KMS* 10/08/14

from operations under this Contract by Contractor or any other party with whom Contractor has subcontracted. Contractor shall not disturb or displace any protection installed by others without the written approval of the party affected.

8.  Compliance with Labor Laws. All applicable laws governing the employment of workers on the Project must be complied with by Contractor and by any party to whom Contractor subcontracts any work. Contractor shall ascertain that all workmen on the Project are properly covered by workers compensation insurance.

9.  Maintenance of Property. Contractor shall keep the Property and surrounding area free from accumulation of waste materials or rubbish caused by operations under this Agreement. Placement of waste materials into an on- Site dumpster shall be deemed compliance with this provision. Upon completion of the Work, Contractor shall remove from and about the Property all waste materials, rubbish, Contractor's tools, construction equipment, machinery and, unless otherwise requested by Owner (which request can only be made if this is a cost-plus contract), surplus materials.

10.  Insurance. Contractor shall obtain insurance coverage as described below. Contractor shall not commence any work without the issuance of policies for all the insurance coverage specified in this Article that Contractor must obtain.

10.1  Until completion and final acceptance by Owner of all the work to be performed by Contractor under this Contract, Contractor agrees to procure and maintain the following types of insurance coverage:

10.1.1  Workers compensation insurance in the amount and manner required by law relative to any workers employed by Contractor for the Work. Contractor shall require any Subcontractor which it engages on the Project to carry Workers' Compensation Insurance and shall require every Subcontractor to produce a certificate of insurance reflecting such coverage in force and effect.

10.1.2  Comprehensive general liability insurance insuring Contractor, and if possible, Owner as an additional insured, against liability for injury to persons (including death) and injury or destruction of property arising out of the Work The policy shall be issued on an occurrence basis with minimum limits of one million dollars ($1,000,000) per person and three million dollars ($3,000,000) per occurrence.

10.1.3  Comprehensive automobile liability insurance covering injury to persons, including death, and damage to property arising from the use of all owned, non-owned, or hired motor vehicles operated by Contractor or its employees in or about the Project and in the performance of Contractor's Work, with minimum limits of liability coverage of three hundred thousand dollars ($300,000) per person and one million dollars ($1,000,000) per occurrence.

10.2  Contractor, for itself and for all those furnishing labor or materials to or through the Contractor (herein collectively "Subcontractors"), hereby agrees that in any insurance policy procured by Contractor and Subcontractors on their own account, as the case may be, relative to

*KMS 10/08/14*

any risk, no matter what the risk may be, the policy will name Owner as an additional insured if the coverage is available to Contractor at a nominal price, or at a cost acceptable to Owner. The cost will be passed on to Owner and is not calculated as part of the Contract price.

10.3        Owner shall maintain a standard premises, liability insurance policy for the Property at all times during the Work. Such policy shall provide coverage in an amount not less than one million dollars ($1,000,000) per occurrence.

10.4        Contractor shall procure a builder's risk insurance policy (insuring against the perils of fire and extended coverage and physical loss or damage) on a replacement cost basis for the Property. The policy shall protect the interests of Contractor, Owner, subcontractors and suppliers in the Project. The cost of the builder's risk policy will be paid by Owner or reimbursed to Contractor and is not calculated as part of Contract sum.

11.   Change Orders.

11.1        Owner and Contractor may, by written agreement (a "Change Order") modify or change the Plans or the scope of the Project. Under no circumstances shall any extra Work be performed unless and until a Change Order is signed by Contractor and Owner. For any such extra Work performed, Contractor shall be compensated by Owner in an amount specified in the Change Order. Any extension of or modification to the work schedule shall be reflected in the Change Order, if reasonably possible. Change orders shall be reflected in the form attached hereto as Schedule D and shall be executed by both Owner and Contractor.

11.2        If any controversy shall arise at any time regarding i) whether an item of Work is part of the Plans or constitutes extra Work, ii) the compensation to be paid pursuant to a Change Order, or iii) the time adjustment to be made pursuant to a Change Order, the parties can pursue one of two measures. First, either party can elect to terminate this Agreement, in which case Contractor shall be entitled to receive payment for all work performed and all materials provided to the date of termination. Second, the parties may agree to proceed with the alterations and to resolve the disputed items at a later time.

11.3        Minor changes in the Project which do not affect the quality or nature of materials used or of the Project and which do not result in an increase in the cost to Owner, shall not require a written Change Order. Contractor shall notify Owner of such changes.

12.   Warranty. Contractor warrants that materials and equipment furnished for the Project will be of good quality and new unless otherwise required or permitted by this Contract, including the Plans. Contractor further warrants that the Work will be free from defects not inherent in the quality required or permitted.

13.   Defects.

13.1        Defects are conditions relating to the quality of the work which are unacceptable in the construction industry, which unreasonably affect the use, purpose, or contemplated life expectancy of the work. Contractor shall promptly repair, replace, restore, or rebuild any finished

*KMS   10/06/14*

*AD   10/22/14*

work in which defects in material or workmanship may appear, or to which damage may occur because of such defects, during the one-year period after the date of final acceptance of the Work. The date of final acceptance shall be deemed the earlier of the date on which a certificate of occupancy is issued or the date Owner moves in to the Property.

13.2      Contractor's warranty excludes damage or defect caused by abuse, modifications not executed by Contractor, improper or insufficient maintenance, and improper operation, normal wear and tear caused by ordinary use, or damage and claimed effects caused by the work of third parties. These warranties shall extend for a period of one year from the date of substantial completion, which date shall be presumed to be the date of issuance of a certificate of occupancy, or the date Owner takes possession or control of the Property, whichever is earlier. This warranty does not cover appliances and operating systems, which items are covered by manufacturers' warranties, except to the extent a defect is caused by Contractor's, or its Subcontractor's installation.

14.      Dispute Resolution. Without limiting the provisions of Article 12.2, the parties agree to mediate any dispute arising out of this Contract. If the parties are unable to resolve their dispute through mediation, they agree to submit all disputes to binding arbitration, through the use of a single arbitrator, in accordance with New Mexico's Uniform Arbitration Act. If the parties are unable to agree upon an arbitrator, the presiding judge of the First Judicial District Court in Santa Fe County shall be requested to make the selection. The arbitration shall be held in Santa Fe, New Mexico.

15.      Owner's Cancellation. Owner reserves the right at any time, in its sole discretion, to cancel this Contract by notice to Contractor setting forth a date for the termination of this Contract not less than five business days from the date of service of the notice. In that circumstance, Owner's liability shall be to pay for the Contractor's cost of labor and materials physically incorporated into the Project up to the effective date of cancellation, along with the Contractor's cost of materials specifically purchased or fabricated by Contractor for the Project up to the date the notice of cancellation was given (which materials Owner shall retain), plus 22% of the total Contract Cost to cover anticipated overhead (12%) and profit (10%), together with applicable gross receipts tax, less payments already made to Contractor.

16.      Notice. All notices directed to either party from the other, must be in writing, addressed to them at their respective addresses above (or such other addresses as set forth herein) and sent by hand delivery, facsimile, registered mail or certified mail. The notice shall be deemed given on the date of hand delivery, facsimile transmission, or the date of registration with the postal authorities or the date of mailing, as the case may be. The parties' facsimile numbers and e-mail addresses for purposes of compliance with this provision are:

| | | | |
|---|---|---|---|
| Owner: | Seaside Partners, LLC. | 561.252.7894 | quimbyroxanne@gmail.com |
| | (Name) | (Phone) | (Email address) |
| Contractor: | K.M. Skelly, Inc. | (505) 992-1459 | kevin@kmskelly.com |

*KMS 10/00/14*

*AD 10/22/14*

17. <u>Inspections</u>. Contractor shall arrange for any and all inspections of the Work as are required by the State (X), City (X), County (X) or other governing agency (X). The cost of any such inspection is included in the Contract price, or reflected on Schedule A

18. <u>Miscellaneous</u>.

18.1 <u>Contractor's Control of Project</u>. Owner shall not enter into any contract or agreement for the performance of any work on the Project with any Subcontractor hired by Contractor without the express written consent of Contractor. Owner shall not hire any person, contractor, or employee to perform work or provide services on the Project during the performance of this Contract without the consent of Contractor.

18.2 <u>Entire Understanding</u>. This Contract contains the entire understanding of the parties relating to the Project. Any agreement hereafter made shall not operate to change, terminate, or discharge this Contract in whole or in part, unless such agreement is in writing and signed by the party against whom enforcement is sought.

18.3 <u>Governing Law</u>. This Agreement shall be governed by, and interpreted under, the laws of the State of New Mexico.

18.4 <u>Binding Effect</u>. This Agreement is binding on Owner and Contractor, their successors and assigns. Neither party shall assign its rights or obligations under this Agreement without the written consent of the other party.

18.5 <u>Attorney's Fees</u>. If either party is required to enforce this Agreement, including commencement of an arbitration proceeding as contemplated herein, the prevailing party in such proceeding shall be entitled to recover its litigation expenses, including reasonable attorney's fees, incurred in such proceeding.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

Seaside Partners, LLC.  Roxanne Quimby

K.M. SKELLY, INC., a New Mexico Corporation

By _____  PRESIDENT
Kevin M. Skelly, President

## Schedule A

The work to be performed is: Construct a new home with a detached guesthouse/studio and related yard walls.

ALL DRAWINGS AND ATTACHMENTS TO BE SIGNED OR INITIALED

SCHEDULE 'A'

BLUEPRINTS  by Trey Jordan Architects.
Dated: 8/28/14

**Schedule B**

Fixed Price Items
Owner will pay a "cost plus" amount consisting of all construction costs plus 12% overhead and 10% Gross Profit, (plus gross receipts tax at time of invoicing) to Contractor for complete performance of the Work.

Payment shall be made in stage payments as the Work progresses, generally not more often than bi-weekly (every other week).  Payments shall represent the value of the unpaid Work performed since the last payment and anticipated costs and deposits for the upcoming stage.  Payments will be made by Owner within 5 days after the submission of each statement.
Down Payment = $70,000.00.

_Kms_  10/08/14

_JR_  10/22/14

**Schedule C**

Event
Application for Santa Fe County Permit                    by Trey Jordan Architects

Commencement of Work                                     currently in excavation phase

Completion of Work                                       To be determined upon receipt of
                                                         construction drawings.  Approx 13 months.

Note:  Each Change Order shall specify the extent, if any, to which it will affect the Completion
date.

Kms 10/08/14
10/28/14

# SCHEDULE "D"

## K.M. SKELLY, INC.

C/O #



# CHANGE ORDER/ORDER TO PROCEED

001

| DATE: 10/03/14 | JOB NAME: SEASIDE PARTNERS, LLC. |
| ORIGINAL AMT | JOB ADDRESS: 1386 TESUQUE CREEK ROAD SANTA FE, NM 87505 |
| | |

WE PROPOSE THE FOLLOWING CHANGES IN THE SCOPE OF WORK:

**SCOPE OF WORK:**

SUBS AFFECTED: K.M. Skelly, Inc.

SENIOR SUPERVISION: TBD

**SAMPLE**

EXCLUSIONS: NM GRT

EXTENSION OF PROJECT COMPLETION DATE DUE TO THIS CHANGE ORDER: ? days

ARCHITECT APPROVAL: (if necessary)

WE PROPOSE THE FOLLOWING CHANGES IN THE SCOPE OF WORK FOR THE ADDED SUM:

All material is guaranteed to be as specified. All work to be completed in a substantial workmanlike manner according to specifications submitted, per standard practices. Any alteration or deviation from above specifications involving additional extra costs will be executed only upon additional written orders and will become an additional extra on the project. All agreements contingent upon strikes, accidents or delays beyond our control.

**Authorized** Kevin Skelly, President
**Signature** _____

Note: this proposal may be withdrawn by us if not accepted within ____ N/A ____ days.

## Acceptance of Proposal:

The above prices, specifications and conditions are Satisfactory and are hereby accepted. K.M. Skelly, Inc. Is authorized to do the work as specified. Payment will be made as outlined above.

Signature_____
Seaside Partners, LLC. Roxanne Quimby
Date_____

KMS 10/08/14
RQ 10/22/14

**AMENDMENT I TO**
**AGREEMENT BETWEEN SEASIDE PARTNERS, LLC, ROXANNE QUIMBY**
**"Owner", AND K.M. SKELLY, INC., KEVIN M. SKELLY "Contractor"**

This First Amendment to Agreement between the Owner and Contractor ("Amendment") is dated effective as of the date fully executed by both parties ("Effective Date"), and is entered into by and between Seaside Partners, LLC. "Owner", and K.M. Skelly, Inc. "Contractor".

Owner and Contractor now desire to amend the terms of the Agreement as more particularly set forth below:

1. <u>Section 1, Contract Work.</u> of the Agreement is hereby amended and restated in its entirety and shall hereafter be and read as follows:

<u>Contract Work.</u>  Contractor agrees to perform the Work as drawn by Trey Jordan Architects, in phases, as blueprints become available.  At the time of this Amendment, Contractor is working under the most recent blueprints dated March 3, 2015, Set Three (3), Revision One (1).  Construction will progress for the entire length of the "Project" on a "Cost Plus" basis as described in Amended Schedule "B"; all of which are referred to below as the "Specifications."  The Work to be performed by Contractor is called the "Work" and the overall project contemplated by this Agreement is called the "Project."  The Work shall be performed in accordance with the Specifications, as amended, in the manner specified below.

2. <u>Section 3, Contract Cost,</u> of the Agreement is hereby amended and restated in its entirety and shall hereafter be and read as follows:

<u>Contract Cost.</u>  Owner agrees to pay Contractor its actual cost of construction plus 12% Overhead and 10% Gross Profit calculated upon the total cost of construction, except with respect to Contractor's fee for supervision as set forth below, plus applicable New Mexico gross receipts tax (**calculated at time of invoicing**), for Contractor's complete performance of the Work, in accordance with the terms stated in Schedule B.  Other than the amounts set forth above, plus the amounts set forth in any change orders, plus the applicable gross receipts tax payable on the compensation paid to Contractor, all costs and other fees, if any, to be paid in connection with the work shall be paid by Contractor.  Contractor's supervision fee is in addition to the construction costs, but will not be subject to the overhead and gross profit percentages. Contractor's supervision fee is $100.00 per hour and is charged while Contractor is supervising on site or otherwise conducting business for Seaside Partners.  Contractor's supervision hours will be documented by way of the electronic time keeping procedure in place on the site or by timesheets maintained by Contractor both of which will be submitted with invoices to Owner. **Contractor's proposed budget includes an estimated supervision fee of $100,000 based upon completion of the project within 12 months of the start date.  Contractor agrees that the supervision fee shall not exceed $120,000, unless Owner's changes to the Work and/or other conduct by Owner delays completion of the Work to the point that Contractor's documented supervision fee exceeds $120,000.  In such event, Owner shall pay Contractor's supervision fee in excess of $120,000 based upon the billing rate and procedure set forth above.**  Invoices shall be submitted by Contractor to Owner as the Work progresses, **on a bi-**

**Exhibit 2**

**weekly basis** (every other week).  Invoices shall state the amount due for the unpaid Work performed since the last invoice and deposits for the upcoming stage.  Payment will be made by the Owner within **five business** (5) days after the submission of each invoice.  **If payment of an invoice submitted to Owner is not paid within five (5) business days, Contractor will provide Owner with written notice of the default and Owner will have ten (10) days from the date of the notice to make the payment.  If payment is not received within ten (10) days of date of the written notice, Contractor may terminate the contract.** In such event Owner shall pay Contractor all sums required as though this Contract were terminated by Owner pursuant to Paragraph 15.  **Contractor will not be required to perform further Work on the Project during the ten (10) day period.**  An exemplar invoice is attached to this contract as Exhibit 1.

3.  <u>Schedule A,</u> of the Agreement is hereby amended and restated in its entirety and shall hereafter be and read as follows:

The work to be performed is:  Construct a new home and related yard walls.

ALL DRAWINGS AND ATTACHEMENTS TO BE SIGNED OR INITIALED

SCHEDULE "A"

REVISED BLUEPRINTS by Trey Jordan Architects
Dated: March 3, 2015.
Set 3, Revision 1.

4.  <u>Schedule B, Fixed Price Items,</u> of the Agreement is hereby amended and restated in its entirety and shall hereafter be and read as follows:

- <u>Cost Plus.</u> Owner will pay a "Cost Plus" amount consisting of all actual construction costs plus 12% Overhead and 10% Gross Profit (plus gross receipts tax assessed at the time of invoicing) to Contractor for complete performance of the Work.  Contractor will use due diligence in receiving bids from multiple sources whenever possible for each stage of the Project to ensure the best pricing and quality for the value.  All bids will be submitted to Owner's Agent for review and approval. All invoices, lien waivers, time sheets and misc. entries pertaining to the construction of the home at 1380 Tesuque Creek Road will be delivered to **Owner** upon invoicing.

Contractor shall seek approval of Owner's Agent for purchases exceeding $1000, excluding day to day supplies required by Contractor to perform Work.

Invoices shall be submitted by Contractor to Owner as the Work progresses, **on a bi-weekly basis** (every other week).  Invoices shall state the amount due for the unpaid Work performed since the last invoice and deposits for the upcoming stage.  Payment will be made by the Owner within five **business** (5) days after the submission of each invoice.

2

5.    The following paragraph is hereby added to the Agreement:

Section 18.6, Owner's Agent.  Owner has appointed Walter Abernathy, Agent, to act as her agent with respect to the completion of the work required pursuant to the terms of the Contract.  Contractor can contact Agent by cell phone at 415-624-6988, or by email at Walter.abernathy@gmail.com.  Agent is authorized by Owner to meet and/or confer with Contractor, with or without Owner being present, and to make all decisions relative to the completion of the work contemplated by the terms of the Contract, including without limitation, changes to the work or to the project that require execution of a written change order, until such time as Owner notifies Contractor, in writing, that Agent is no longer authorized to act as her agent.  Contractor shall keep Owner informed of any changes, recommendations, delays, or other matters regarding the work which are discussed with or presented to Agent.  Contractor shall send all notices contemplated by paragraph 16 of the Agreement to Agent.

6.    The following amendments are hereby made to the Agreement:

Section 10, Insurance; paragraph 10.4, The cost to procure Builder's Risk Insurance policy shall not be subject to Contractor's 12% Overhead and 10% Gross Profit.

7.    Section 14, Dispute Resolution, of the Agreement is hereby amended and restated to reference Article 13.2.

8.    Schedule C, of the Agreement is hereby amended and restated in its entirety and shall hereafter be and read as follows:

Event:

| | |
|---|---|
| Application for Santa Fe County Permit: | Completed by Trey Jordan Architects. Extensions to be obtained by K.M. Skelly, Inc. as needed. |
| Re-commencement of Work: | At the earliest date subcontractors are available; approximately 15 days from execution of Amendment I. |
| Completion of Work: | Approximately 12 months from Re-commencement date based on 3/03/15 drawings. |

Note I:  Each Change Order shall specify the extent, if any, to which it will affect the Completion date of the Project.

3

Note II: there are incomplete finishes and details on the blue prints that need to be validated by Walter Abernathy, and SSP. Responses and specifications could affect the completion date.  Per Owner's request, we expect the point of termination by K. M. Skelly, Inc. to coincide with the successful completion of CID inspection for weatherization and air infiltration.  This inspection will grant Owner approval for wall coverings, at which point Owner will complete the final construction of the home.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth.

Seaside Partners, LLC

By _Roxanne Quimby_
Roxanne Quimby

Dated _Aug. 27, 2015_


K.M. Skelly, Inc, a New Mexico
Corporation

By _Kevin M. Skelly, President_
Kevin M. Skelly, President

Dated _Sept. 09, 2015_

4



# STATEMENT

Date: April 5, 2017
STATEMENT # 100

Comments

Bill To    Seaside Partners, LLC
1380 Tesuque Creek Rd
Santa Fe, NM  87501

| Date | Description | Balance | Amount |
|------|-------------|---------|--------|
|  | Balance Forward | 9,458.73 |  |
| 12/12/16 | Invoice #6016 |  | 37,854.57 |
| 01/03/17 | Invoice #6037 |  | 45,518.24 |
| 04/05/17 | Invoice #6066 |  | 3608.50 |
| 04/05/17 | Invoice #6067 |  | 221,406.88 |
| 04/05/17 | Credit Memo #6068 |  | -37,856.60 |

| Current | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | Over 90 Days Past Due | Amount Due |
|---------|--------------------|--------------------|--------------------|----------------------|------------|
| 187,158.78 |  |  |  | 92,831.54 | 279,990.32 |

Remittance

| Statement # | 100 |
|-------------|-----|
| Date |  |
| Amount Due |  |
| Amount Enclosed |  |

Make all checks payable to K. M. Skelly, Inc.

*Thank you for your business!*

K. M. Skelly, Inc.  13 Calle Contento, Santa Fe, NM  87505  Phone 505.992.1459  www.kmskelly.com

# Exhibit 3

## CLAIM OF LIEN

THE UNDERSIGNED, K.M. Skelly Inc., (Contractor or Claimant) GB license number 384120, whose address is 10 Calle Cantando, Santa Fe, NM 87508, being a corporation duly licensed to provide general contracting services within the State of New Mexico makes the following claim of lien:

1.     The owner(s) of the property to which this lien applies are Roxanne Quimby and/or Seaside Partners, LLC.  The property to which this lien applies is located in Santa Fe County, New Mexico.  The common address at which the work was performed and the materials were supplied is 1380 Tesuque Creek Rd., Santa Fe, NM    87501 (the premises) more particularly described as:

> Lot 11, of Tesuque Creek Subdivision as shown and delineated on the "Subdivision/Lot Line Adjustment Plat of Tesuque Creek Subdivision & Santa Fe Summit Phases 4, 5 & 6, a portion of Tract 39, Sections 4, 5, 8 & 9, T17N. R10E, N.M.P.M., Santa Fe County, New Mexico" by Paul A. Rodriquez, N.M.P.S. No 13839 on August 6, 2002, filed September 27, 2002 as Document No. 1225,751, and recorded in Plat Book 513, Pages 1 thru 6, and filed October 15, 2002 as Document No. 1228, 348 and recorded in Plat Book 514, Page 37-39, in the records of Santa Fe County, New Mexico

2.     Lien Claimant provided labor, services, equipment and/or materials with respect to construction of your home, but not limited to, excavation, and related materials and labor on the project.  Claimant provided the materials and labor pursuant to a certain construction agreements between Claimant and owner dated October 9, 2014 (original) and the amendment to the originals dated September 9, 2015. Owner owes Contractor the sum of two hundred seventy nine thousand, nine hundred ninety and thirty-two cents. ($279,990.32) together with interest at the rate of 12% APR on balances thirty (30) days past due, or as may otherwise be allowed by law.  The amount due to the date of filing this claim of lien is accurately reflected on the statement attached hereto and marked as Exhibit "1".

3.     The materials and labor furnished and acquired for use have been fully incorporated into the construction on the property described herein.  Claimant provided a Notice of its intention to file lien, and has made demand upon the owner for payment and payment has

**Exhibit 4**

not been made. Claimant asserts its lien in the amount of $279,990.32 plus interest, attorneys' fees, filing fees, and all other legal expenses incurred or to be incurred, including any incurred in the foreclosure of its lien as allowed by law. Contractor states that its lien is timely made and filed, and that all materials and services were provided to the job site and incorporated in the residence by K.M. Skelly, Inc.

4.     At the time of making said claim, less than one hundred twenty (120) days had elapsed since the close of substantial completion. To date, a certificate of occupancy has not been issued.

5.     All just credits and offsets have been made and are reflected in Claimant's summary invoice, Exhibit "1".

Kevin M. Skelly, President
K. M. Skelly, Inc.

## VERIFICATION

STATE OF NEW MEXICO     )
                        )ss.
COUNTY OF SANTA FE      )

The undersigned, Kevin M. Skelly, President of K.M. Skelly, Inc., having first been duly sworn and upon oath states as follows:

1.     I am President of K.M. Skelly, Inc., a New Mexico corporation.

2.     K.M. Skelly, Inc. is a licensed contractor operating under GB-98 License No. 384120.

3.     I have personal knowledge and information concerning the labor, equipment, and materials supplied to the owner on the property and of the other matters stated herein.

4.     I have read the foregoing Claim of Lien and the statements and information contained herein is true and correct.

2

Kevin M. Skelly, President
K. M. Skelly, Inc.

Subscribed and sworn to before me this 20th day of April _____, 2017 by Kevin M. Skelly.

My commission expires:

5/11/19

Notary Public

OFFICIAL SEAL
Angelique J. Angel
NOTARY PUBLIC-State of New Mexico
My Commission Expires 5/11/19

## ACKNOWLEDGMENT FOR CORPORATION

STATE OF NEW MEXICO  )
                     )ss.
COUNTY OF SANTA FE   )

On April 20th _____, 2017, before me personally appeared Kevin M. Skelly, to me personally known, President of K. M. Skelly Inc., a corporation organized under the laws of the State of New Mexico, who executed the foregoing on behalf of the corporation by authority of its board of directors.  Kevin M. Skelly acknowledged said instrument to be the free act and deed of said corporation.

Witness my hand and seal on this the day and year first above written.

Notary Public

My commission expires:

5/11/19

OFFICIAL SEAL
Angelique J. Angel
NOTARY PUBLIC-State of New Mexico
My Commission Expires 5/11/19

SEC CLERK RECORDED 04/21/2017



K. SESKELLY

| | | | Date: April 5, 2017 |
| | | | STATEMENT # 100 |

Comments

Bill To    Seaside Partners, LLC
1380 Tesuque Creek Rd
Santa Fe, NM  87501

| Date | Description | Balance | Amount |
|------|-------------|---------|--------|
| | Balance Forward | 9,458.73 | |
| 12/12/16 | Invoice #6016 | | 37,854.57 |
| 01/03/17 | Invoice #6037 | | 45,518.24 |
| 04/05/17 | Invoice #6066 | | 3608.50 |
| 04/05/17 | Invoice #6067 | | 221,406.88 |
| 04/05/17 | Credit Memo #6068 | | -37,858.60 |

| Current | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | Over 90 Days Past Due | Amount Due |
|---------|--------------------|--------------------|--------------------|----------------------|-----------|
| 187,158.78 | | | | 92,831.54 | 279,990.32 |

Remittance
Statement #          100
Date
Amount Due
Amount Enclosed

*Thank you for your business!*



EXHIBIT

SEC CLERK RECORDED 09/14/2017

```
COUNTY OF SANTA FE        )        CLAIM OF LIEN
STATE OF NEW MEXICO       ) ss     PAGES: 5

I Hereby Certify That This Instrument Was Filed for
Record On The 21ST Day Of April, 2017 at 09:33:27 AM
And Was Duly Recorded as Instrument # 1823659
Of The Records Of Santa Fe County

                    Witness My Hand And Seal Of Office
                            Geraldine Salazar
Deputy                  County Clerk, Santa Fe, NM
```



FILED IN MY OFFICE
DISTRICT COURT CLERK
8/2/2017 10:15:54 AM
STEPHEN T. PACHECO
Jorge Montes

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

K.M. SKELLY, INC.,

      Plaintiff,

v.                                   Cause No.: D-101-CV-2017-02182

SEASIDE PARTNERS, LLC,           Case assigned to Thomson, David K.

      Defendant,

<u>SIX PERSON JURY DEMAND</u>

    COMES NOW Plaintiff, K.M. Skelly, Inc. by and through its attorneys, Felker, Ish,

Ritchie & Geer, P.A. (Mark L. Ish, William D. Winter and Bryan M. Rowland), and demands a

jury of six persons on all issues triable by jury, pursuant to Rule 1-038 NMRA.   Plaintiff

submits its jury demand fee herewith.

                      Respectfully submitted,

                      **FELKER, ISH, RITCHIE & GEER, P.A.**

                      By: */s/ Mark L. Ish*
                          Mark L. Ish, Esq.
                          William D. Winter, Esq.
                          Bryan M. Rowland, Esq.
                          911 Old Pecos Trail
                          Santa Fe, NM   87505
                          (505) 988-4483
                          markish@felkerishlaw.com
                          williamwinter2003@yahoo.com
                          bmr@felkerishlaw.com